UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK HOGAN,

    Petitioner,

vs.                                      Case No. 8:03-cv-2274-T-17TGW

JAMES V. CROSBY, JR.,

    Respondent.

## **ORDER**

THIS CAUSE is before the Court on Petitioner Patrick Hogan (Hogan's) 28 U.S.C. 2254 Petition for Writ of Habeas Corpus. Hogan challenges his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

BACKGROUND

On September 28, 1998, the State Attorney charged Hogan by Information with one count of Attempted Murder in the First Degree of his stepson Buddy Clay. (V1, R 11-14).[1] A jury trial commenced on July 12, 1999, before the Honorable J. Rogers Padgett, Circuit Judge. Hogan was represented by assistant public defender Craig Kubiak. The jury found Hogan guilty of attempted first degree murder as charged. (V1, R 49) Hogan was

---

[1] The Respondent filed the record on direct appeal as four volumes in Exhibit 19. Citations to the record will be designated by the volume and the letter "R" followed by page number, when the pages are so numbered. Otherwise, the citation will be designated by the volume and the letter "T" for the transcript page.

adjudicated guilty and, on August 30, 1999, the state trial court sentenced Hogan to twelve years imprisonment with a three-year mandatory minimum for use of a firearm. (V1, R 52-59).

Hogan, who was represented by Special Assistant Public Defender J. L. "Ray" LeGrande, appealed. On September 29, 2000, the state district court of appeal per curiam affirmed the conviction and sentence. Hogan v. State, 775 So.2d 295 (Fla. 2d DCA 2000)[Table].

On October 24, 2000, Hogan filed a Rule 3.850 Motion for Post-conviction Relief. (Exhibit 5). Hogan filed an amended motion for post-conviction relief on October 26, 2000. (Exhibit 6). On October 30, 2000, Hogan filed a memorandum of law in support of the Rule 3.850 motion. (Exhibit 7). On June 11, 2001, the state trial court issued an order summarily denying grounds two, three, four, and five, and directed the State to respond to ground one. (Exhibit 8). As to the grounds summarily denied, the court found that they were procedurally barred in that they should have been raised on direct appeal, in a petition for writ of habeas corpus, or in a motion to correct sentence.

On August 30, 2001, the State filed a response to the Rule 3.850 motion. (Exhibit 8). On May 3, 2002, the state trial court entered an order Denying, in Part, Motion for Post-Conviction Relief and Amended motion for Post-Conviction Relief and Order Granting Evidentiary Hearing. (Exhibit 9). Thereafter, on July 19, 2002, an evidentiary hearing was held on ground one of Hogan's Rule 3.850 motion before the Honorable Jack Espinosa, Jr., Circuit Judge. (Exhibit I0). Hogan was represented at the hearing by appointed counsel, Edward Campbell, Esquire.

Following the hearing, on September 26, 2002, the state trial court judge issued a written order denying the original and amended motions for post-conviction relief. (Exhibit 11). The order reads:

> Defendant alleged in part that counsel was ineffective for failing to object to the State Attorney's repeated use of testimony about Defendant being a hit man. At the July 19, 2002, evidentiary hearing both Defendant and counsel, Craig Kubiak, testified on their own behalf. Since the hearing was reported, and transcribed, the Court will not attempt to summarize or restate the testimony except to note particular items of consequence.
>
> Mr. Kubiak testified that based on the trial strategy he planned on using in the case, he did not believe that the issue repeatedly coming out during the trial that Defendant was a hit man would be prejudicial to his client. (See evidentiary hearing, transcript, dated July 19, 2002, p. 11. L: 8- 15, attached). The strategy employed in the instant case, as testified to by Mr. Kubiak throughout the hearing, was that it would have been an absurdity to believe that Defendant was a hit man. (See evidentiary hearing transcript, dated July 19, 2002, p. 15, L: 9-12, attached). As part of his strategy, Mr. Kubiak testified that he did not present any evidence or witnesses to support his strategy because it would have been counter productive and self-serving to present any additional evidence with such a sarcastic type of defense. (See evidentiary hearing transcript, dated July 19, 2002, p. 23, L: 16-25, attached). Mr. Kubiak testified that he felt that this was an appropriate strategy to use in the instant case and discussed this as such with Defendant. (See evidentiary hearing transcript, dated July 19, 2002, p. 26, L: 20- 25, attached). Defendant, contrary to counsel's testimony, testified that Mr. Kubiak did not discuss his strategy to controvert the hit man testimony. (See evidentiary hearing transcript, dated July 19, 2002, p. 32, L: 9-12, attached).
>
> Based on the foregoing, the Court finds that counsel made an informed decision not to object to the State's repeated use of testimony regarding Defendant being a hit man. "Judicial scrutiny of counsel's performance must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689, S.Ct. at 2065 [citations omitted] Since decisions concerning trial strategy or trial tactics ultimately rests with counsel, "tactical or strategic decisions of counsel do not justify post conviction relief on the grounds of ineffective assistance of counsel." Mazard v. State, 649 So.2d 255 (Fla. 3d DCA 1995); See also, Medina v. State, 673 So.2d 298

>   (Fla. 1990) (holding that counsel cannot be ineffective for strategic decisions made during a trial).   As such, Defendant is not entitled to relief.

(Order Denying Motion for Post-Conviction Relief and Amended Motion for Post-conviction Relief, at pp. 2-3).  (Exhibit 11).  Hogan appealed the adverse ruling. He filed an initial pro se brief on or about January 15, 2003. (Exhibit 12). On February 12, 2003, the state district court of appeal granted the State's motion to strike the initial brief. (Exhibit 13).  Thereafter, on or about March 10, 2003, Hogan filed an amended initial brief which included record citations. (Exhibit 14). The State subsequently filed its answer brief. (Exhibit 15). On September 17, 2003, in Case No. 2DO2-4827, the state district court of appeal per curiam affirmed the denial of post-conviction relief. (Exhibit 16). The mandate was issued on October 13, 2003. (Exhibit 17).

Hogan then signed the present timely-filed federal petition on October 28, 2003, and presented it to prison officials for mailing on that date. Hogan raises two claims for relief in his federal petition: (1) the evidence was insufficient to support a conviction for attempted first degree murder; (2) trial counsel was ineffective for "standing by" while state witnesses were allowed to testify about bad character and failing to object to inadmissible testimony that influenced the jury to convict. These claims are exhausted to the extent they were raised in Hogan's direct appeal or motion for post-conviction relief.  However, ground one does not raise an issue of federal constitutional magnitude and Hogan fails to satisfy the threshold requirements of 28 U.S.C. § § 2254(d) and (e) on either of the two grounds.

## STANDARDS OF REVIEW

Because Hogan filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA). <u>Penry v. Johnson</u>, 532 U.S. 782, 792 (2001); <u>Henderson v. Campbell</u>, 353 F.3d 880, 889-90 (11th Cir. 2003); <u>Maharaj v. Sec'y of Dept. of Corrections</u>, 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA "establishes a more deferential standard of review of state habeas judgments," <u>Fugate v. Head</u>, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002); <u>see</u>, <u>Bell v. Cone</u>, 2005 WL 123827 (U.S. Jan. 24, 2005) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given benefit of the doubt)[citing 28 U.S.C.A. § 2254(d)]). AEDPA is relevant to a review of this Petition.

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Price v. Vincent</u>, 123 S.Ct. 1848, 1852-53 (2003); <u>Clark v. Crosby</u>, 335 F.3d 1303, 1308 (11th Cir. 2003); <u>Harrell v. Butterworth</u>, 251 F.3d 926, 930 (11th Cir. 2001). "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law. <u>Mitchell v. Esparza</u>, 124 S.Ct. 7, 10

(2003); Clark v. Crosby, 335 F.3d at 1308-10; Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. Mitchell v. Esparza, 124 S.Ct. at 10 (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). See also Price v. Vincent, 123 S.Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75-77. A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell v. Esparza, 124 S.Ct. at 10; Parker v. Secy of Dept. of Corrections, 331 F.3d 764, 775-76 (11th Cir. 2003).

A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000). The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable. Lockyer v. Andrade, 538 U.S. at 75-77; Williams, 529 U.S. at 409-10; Penry v. Johnson, 532 U.S. at 791-792; Woodford

v. Visciotti 537 U.S. 19, 25 (2002); Mitchell v. Esparza, 124 S.Ct. at 11-12; Price v. Vincent, 123 S.Ct. at 1853.

Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Holland v. Jackson, 124 S.Ct. 2736, 2737-2738 (2004) (citing Yarborough v. Gentry, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91. The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir. 2001).

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

### No Presumption that State Court Ignored Its Procedural Rules

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal. Such a ruling does not suggest that the state court resolved the issue

on the federal claim presented. See Coleman, 501 U.S. 722, 735-36 (1991); Kight v. Singletary, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); Tower v. Phillips, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir.1992). To the extent that a federal question is raised in the federal habeas petition, the federal question was not exhausted in state court if the issue were raised only as a state law claim in state court. Anderson v. Harless, 459 U.S. 4, 6-8 (1982).

Finally, in the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in Chapman v. California, 386 U.S. 18 (1967). "The test is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637. Although no constitutional error has occurred in Hogan's case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Hogan's petition must be **DENIED**.

Ground One

Hogan contends the trial court erred in denying his motion for judgment of acquittal. Hogan is not entitled to relief on this claim for several reasons. First, the issue is procedurally barred because Hogan presented his insufficiency of evidence claim as a violation of state law rather than as a federal constitutional violation. Even if ground one had been raised as a federal question, Hogan defaulted his ground by not raising the constitutional dimension of ground one in a timely manner both at trial and on direct appeal. Hogan raised a sufficiency-of-the-evidence issue on direct appeal. However, the arguments advanced by Hogan in his motion for judgment of acquittal and on direct appeal were alleged in state law terms. Even if state law bears some relation to federal constitutional requirements, Luton v. Grandison, 44 F.3d 626, 628 (8th Cir.1994), cert. denied, 513 U.S. 1195 (1995), as it does here, Melendez v. State, 498 So. 2d 1258, 1261 (Fla. 1986) (adopting Jackson v. Virginia standard), the presentation of the claim in state law terms is insufficient to support a finding that the state courts have had a fair opportunity to address the constitutional claim. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court).

Finally, and alternatively, ground one of the instant petition can be denied on independent and adequate state substantive grounds. A federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. See

Eagle v. Linahan, 279 F.3d 926, 936 (11th Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state decision in Hogan's direct appeal settles that, as a matter of state law, there was sufficient evidence adduced by the state to establish the elements of his attempted first degree murder offense to survive an acquittal motion and to sustain his conviction of that offense.

      Alternatively, Hogan fails to make out a threshold showing of entitlement to relief under 28 U.S.C. §§ 2254(d) and (e). The focus of this Court's AEDPA inquiry is not on the broad question of whether the state trial court erred in denying the acquittal motion, but rather on the limited question of whether in giving the attempted murder offense to the jury to decide, the state court decision, followed by the silent affirmance, resulted in an objectively reasonable application of governing Supreme Court precedent.  See Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (where state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable).

      To satisfy the constitutional requirement of due process in a criminal trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. In re Winship, 397 U.S. 358, 364 (1970).  When considering the sufficiency of the evidence on review, the proper inquiry is not whether the re-viewing court itself believes that the evidence established guilt beyond a reasonable doubt but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979)(citation omitted); see also Bishop v. Kelso, 914 F.2d 1468, 1470  (11th Cir. 1990).

In this case, it is clear that any reasonable juror could have and would have found the essential elements of the offense beyond a reasonable doubt. The premeditation required to support an attempted first degree murder conviction can be formed in a moment and need only exist long enough for an accused to be aware of the nature and probable consequence of his acts. DeAngelo v. State, 616 So. 2d 440, 441 (Fla. 1993). The defendant in DeAngelo strangled the victim, but confessed he had done so in a blind rage during an argument. The state trial court held that there was substantial, competent evidence presented which defeated this theory, including the length of time it would have taken to kill the victim, and the defendant's previous indication of an intention to kill the victim.

In the present case, there is substantial competent evidence to support the charge. Buddy Clay, Hogan's stepson and the victim in this case, testified that Hogan woke him up while no one was at home, and asked Buddy to go target shooting with him. Hogan had secretly purchased a .22 caliber handgun and Buddy and Hogan had gone out for target practice on other occasions. Hogan wanted to create a silencer for his gun. Hogan tried several homemade methods that were unsuccessful.

Buddy told Hogan about a movie in which he saw a character use a potato as a silencer. On the day of the shooting, prior to leaving the house, Hogan practiced using the potato as a silencer, and the potato worked. Hogan hid the gun in the bottom of a tackle box. Hogan grabbed a fishing pole and told Buddy that "in case anybody asks, I can say I went fishing." (V2, T 153-163).

Hogan moved the gun to the back of the truck.   Hogan drove to a wooded area and said to Buddy, "This will be perfect." Hogan asked Buddy to throw out the pistol case and

duct tape, which was used to hold the potato on the gun. While holding the loaded gun with the silencer attached, Hogan told Buddy that he [Hogan] dropped a bullet and asked Buddy to pick it up. Hogan had the gun in his right hand. (V2, T 167-169).

As Buddy looked for the bullet, Hogan shot him. Hogan was approximately two feet away. Buddy got up and started to run away. Hogan chased and grabbed him. Hogan said, "Buddy don't run." Hogan still had the gun pointed at Buddy. (V2, T 170-172, 188). Hogan kept running in a zigzag fashion. Hogan did not say anything else. Buddy ran into a school and received help from one of the teachers. Buddy and Carl Watson, a teacher at the school, testified that they saw Hogan in his vehicle driving slowly in front of the school, looking from right to left. (V2, T 174-175, 200-202).

Corporal Michael Simpkins testified that he conducted a traffic stop on Hogan's vehicle and Hogan appeared cool and calm. Corporal Simpkins and Deputy Phillip Beauregard both testified that Hogan stated he did not know why he was being stopped. Deputy Beauregard testified that post-<u>Miranda</u>, Hogan stated that the last time he saw Buddy, Buddy was sleeping in his bed. Hogan stated that he was going fishing at Lake Thonotasassa. However, he was driving in the opposite direction. (V2, T 205-207, 211-212, 214).

Detective Jim Iverson testified that Hogan initially denied shooting Buddy and said he had been with the victim earlier but dropped him off at school. In a second interview, Hogan told the detective that Buddy had been accidentally shot while they were out target practicing. (V2, T 220, 223). However, Hogan admitted throwing the gun away and said he was afraid of being found with the gun. Hogan further admitted that he had an insurance policy on the victim. Laura Hogan testified that Hogan told her that he needed an insurance

policy on Buddy because "we would need money to bury Buddy with because he ran with the wrong crowd." Hogan also admitted trying the silencer in his backyard even though Hogan was on his way to do target practicing. Hogan knew that a bullet was silenced by the potato. Hogan also admitted that he never called for help after shooting Buddy. (V1, T 120; V2, T 224-225; V3, T 295, 303, 309, 311).

The evidence further showed that Hogan knew that Buddy was going to testify against co-defendants in felony cases in which Buddy was involved and Hogan also knew about threats made against Buddy. (V2, T166). Since no one knew Hogan had the gun, and no one knew that Hogan was with Buddy the morning of the shooting, the State offered sufficient evidence to show that Hogan intended to kill Buddy, dispose of the gun and tell everyone he went fishing, counting on everyone believing that Hogan's co-defendants actually killed Buddy.

Intent is usually established by circumstantial evidence, and courts have consistently held that a motion for judgment of acquittal should rarely, if ever, be granted based on the State's failure to prove intent. King. v. State, 545 So. 2d 375 (Fla. 4th DCA), review denied, 551 So. 2d 462 (Fla. 1989). Moreover, whether or not the evidence supports a finding of premeditation is a question of fact for the jury. Compare Bedford v. State, 589 So. 2d 245, 250 (Fla. 1991); Preston v. State, 444 So. 2d 939 (Fla. 1984).

The jury was able to weigh the evidence, observe the witnesses and evaluate their credibility. The jury found Hogan guilty of attempted first degree murder with a firearm.

Ground one does not warrant habeas corpus relief.

Ground Two

Hogan claims he was denied effective assistance of trial counsel where counsel "stood by" while State witnesses were allowed to testify about Hogan's bad character. Specifically, Hogan claims his attorney should have objected to testimony regarding Hogan's being a "hit man," and the types of books and magazines Hogan liked to read. First, it should be noted that prior to trial, defense counsel filed a motion in limine requesting the state trial court to exclude any mention of the Paladin Press magazines belonging to Hogan. (Exhibit 18). After argument by counsel, the state trial court denied the motion in limine. As for testimony regarding Hogan's own statements to witnesses that he had been a hit man, defense counsel testified at the post-conviction evidentiary hearing that he intentionally did not object to such testimony as a matter of trial strategy, and had discussed this strategy with Hogan. Based on counselor's testimony at the hearing, the state trial court found, as a matter of fact, that counsel made an informed decision not to object to the State's repeated use of testimony regarding Hogan's being a hit man.

In order to show a violation of the Sixth Amendment right to counsel, Hogan must satisfy the two-pronged inquiry of Strickland v. Washington, 466 U.S. 558, 687 (1984); Bell v. Cone, 535 U.S. 685 (2002) (courts should apply Strickland to claims that counsel failed to satisfy constitutional requirements at specific points). In this case, counsel's plan was to appeal to the jury's common sense in dismissing as preposterous any suggestion that Hogan had been an actual Mafia hit man. Rather, counsel argued to the jury and brought out through direct or cross-examination testimony and evidence that Hogan, as a new husband and stepfather, was attempting to impress his new wife and stepson by claiming

to be a hit man. (V2; T 108-109, 110, 131; V3; T 240-241, 242, 301; V4; T 363-366)   Even Hogan's stepson did not really believe Hogan had been a hit man. (V3; T 150-151).

At the state post-conviction evidentiary hearing, Hogan's trial counsel, Mr. Kubiak, testified that his strategy was to show the absurdity of Hogan's being a hit man.  (EH 151, 155).[2]  He stated on cross-examination that he tried to keep out evidence of the <u>Soldier of Fortune</u> type magazines Hogan read.   (EH 156). However, his motion in limine was not successful, so counsel had to "come up with" a trial strategy that would help blunt the magazine evidence. (EH 157). Counsel did present an expert witness to support the defense theory of an accidental shooting.  (EH 159). Counsel did not put on evidence that Hogan was a "nice guy," not a hit man, because counsel felt such evidence would be self-serving and counterproductive. (EH 159-160). Evidence was adduced at trial to support counsel's argument that no real hit man would brag about this fact or discuss it with other people, would not have allowed a victim to leave the scene alive, would not have used a potato as a silencer, and would have chosen a more secluded and remote location for a killing. (EH 160). Counsel discussed the case fully with Hogan, including, to counsel's recollection, the "hit man" aspect. (EH 162-163).

The State's case against Hogan was strong. Trial counsel's strategy of countering the hit man testimony with evidence that, under the circumstances of this case, amounted to no more than simple braggadocio, was reasonable.

Even if counsel's choice of strategy could be considered deficient, Hogan would not be entitled to relief because he cannot establish prejudice.  Considering the totality of

---

[2] The transcript of the evidentiary hearing is found at Exhibit 10.

inculpatory evidence against Hogan, there was no reasonable probability that the result of the proceeding would have been different had counsel successfully sought to exclude the "hit man" testimony.

In summary, Hogan has not carried his burden of showing that the state courts' denial of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Ground two does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Hogan's petition is denied, with prejudice. The Clerk is directed to enter judgment against Hogan and to close this case.

ORDERED in Tampa, Florida, on September 12, 2005.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record

Patrick Hogan